UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY  FILED
DOC #:_____
DATE FILED: 2/18/2026
```

| | |
|---|---|
| JOSE A. REYES, | |
| Plaintiff, | **25-CV-681 (KHP)** |
| -against- | **OPINION AND ORDER** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**KATHARINE H. PARKER, United States Magistrate Judge:**

Plaintiff Jose A. Reyes ("Plaintiff"), represented by counsel, commenced this action against Defendant, Commissioner of the Social Security Administration (the "Commissioner"), pursuant to Section 205(g) and/or Section 1631(c)(3) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g).  Plaintiff seeks review of the Commissioner's decision that Plaintiff was not disabled under Sections 216(i) and 223(d) of the Act and, therefore, not entitled to disability insurance benefits ("DIB") from May 7, 2018, the onset date of his alleged disability, through Plaintiff's date last insured ("DLI"), December 31, 2023.

## BACKGROUND

Plaintiff was born on November 3, 1970 and was 48 years old with a limited education[1] when he filed for DIB.  (ECF No. 12 ("A.R."), at 38, 54, 476)  Plaintiff lives with his wife. (*Id.*, at 477)  He was last employed as a construction foreman with a company called Marin Workforce in 2024 and was previously employed as construction worker in 2019.  (*Id.*, at 476-77, 499)  Prior to that, Plaintiff was an HVAC mechanic.  (*Id.*, at 38, 484)  Plaintiff suffers from spine and knee issues, knee and lower back pain, leg weakness, and numbness.  (*Id*. at 302, 344-46)

---

[1] Plaintiff testified that he stopped attending high school after completing the eleventh grade.  (A.R. at 476)

1

### 1. Procedural History

On July 27, 2019, Plaintiff filed an application for DIB under Title II of the Social Security Act, due to a disability stemming from a workplace injury he sustained on May 7, 2018. The application was denied initially on October 16, 2019, and again upon reconsideration on February 11, 2020. Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Mark Solomon on July 17, 2020. In a decision dated September 4, 2020, the ALJ found Mr. Reyes not disabled under the Act. The Appeals Council then denied review on June 21, 2022.

On August 9, 2022, Plaintiff first sought review in the United States District Court for the Southern District of New York. On March 12, 2024, Magistrate Judge Ona T. Wang issued an Opinion and Order remanding the case pursuant to sentence four of § 405(g), and judgment was entered on March 13, 2024. On May 4, 2024, the Appeals Council vacated the September 4, 2020 decision and remanded the matter to an ALJ for further proceedings consistent with the Court's Order. A second administrative hearing was held on November 1, 2024. And in a decision dated November 20, 2024, the ALJ again found Plaintiff not disabled from May 7, 2018 through December 31, 2023. The Appeals Council declined review, and the November 20, 2024 decision became the final decision of the Commissioner now before the Court.

On January 23, 2025, Plaintiff filed this action seeking review of the Commissioner's final decision. (ECF No. 1 ("Compl.")) On July 15, 2025, Plaintiff filed the instant Motion for Judgment on the Pleadings along with supporting papers. (ECF No. 15) In his motion, Plaintiff contends that the Commissioner's decision is not supported by substantial evidence – specifically that in making the residual functional capacity ("RFC") determination, the ALJ failed

to properly evaluate medical opinion evidence.  (ECF No. 16 ("Pl. Br.") at pp. 5, 12-15)  The

Commissioner filed its brief in opposition on September 8, 2025 arguing that Plaintiff has failed

to satisfy his burden of proof to show that the ALJ's decision is unsupported by substantial

evidence.  (ECF No. 18)

### 2.  Medical History

#### A.  Cause of Alleged Disability

Plaintiff's alleged disability took the form of knee and back pain caused by a fall from

eight floors as a result of an elevator malfunction on May 7, 2018.[2] (*Id*., at 281)  The day after

the accident, Plaintiff sought emergency medical treatment.  (*Id.*)  The following summarizes

the medical consultations, examinations, diagnoses, and treatments that followed.

#### B.  Magnetic Resource Imaging ("MRI") and Imaging Reports

MRI studies conducted in May 2018 revealed bilateral knee pathology, including medial

meniscal tears and partial ACL tears in both knees, with additional ligament and chondral

abnormalities in the left knee.  (*Id*. at 302, 344-46)  The imaging studies showed disc pathology

at multiple levels of the lumbar spine, including disc bulges at L3-4 and L4-5 and a herniation at

L5-S1 with thecal sac impingement.  (*Id*. at 283, 1173)  A contemporaneous NCV/EMG study

revealed right L5-S1 radiculopathy.  (*Id*. at 285)

#### C.  Independent Medical Examiners Drs. Arie Hausknecht and Gabriel Dassa

On June 20, 2018, Plaintiff saw Dr. Arie Hausknecht with complaints of knee and lower

back pain accompanied by numbness and tingling in his feet, leg weakness, and episodes in

---

[2] Plaintiff states that he was riding down a freight elevator when it malfunctioned and dropped from the 7th Floor to the basement, causing Plaintiff to fall on impact when the elevator reached the basement. (A.R. at 281)

which his left leg gave way while walking.  (*Id.*)  He also reported difficulty sitting, standing, and sleeping.  (*Id*.)  Physical examination by the doctor revealed tenderness, weakness, decreased range of motion, and difficulty putting on shoes.  (*Id.* at 282-83)  Dr. Hausknecht ultimately diagnosed lumbosacral derangement with aggravation of underlying degenerative joint disease and noted persistent sensorimotor symptoms despite conservative treatment.  (*Id*. at 283)  He opined that Plaintiff had a "temporary total disability" and recommended consideration of interventional pain management or surgical decompression. (*Id*. at 283-84, 467, 814)

Independent medical examiner Dr. Gabriel Dassa also found that Plaintiff had a "temporary total" disability and recommended continuing physical therapy as well bilateral knee arthroscopic surgery.  (*Id.*, at 862-64)

D.   Orthopedic Surgeons Drs. Richard Semble and Sean Lager

On August 27, 2018, three months after the alleged onset date, orthopedic surgeon Dr. Richard Semble conducted an independent medical examination of Plaintiff.  Based on Dr. Semble's report, the Plaintiff ambulated with a normal gait at that time, used a lumbar support and a left knee brace but no assistive walking device.  Dr. Semble further opined that Plaintiff demonstrated a mild lumbar muscle spasm, normal range of motion of the lumbar spine albeit with complaints of pain with all motion, negative straight leg raising, and normal muscle strength in the upper and lower extremities. Examination of the right knee was normal, without complaint of tenderness and minimal restriction of flexion.  (*Id.*, at 317-19)  Upon examination of his left knee, Plaintiff reported complaints of diffuse tenderness but, similarly to with his right knee, the exam was otherwise normal except for minimal restriction of flexion.  (*Id.*) Based on the foregoing, Dr. Semble concluded that Plaintiff would be capable of performing

sedentary duties and should avoid activities involving bending or twisting with a restriction of carrying or lifting objects weighing more than 25 pounds.  (*Id*. at 320)

In October 2018, Plaintiff underwent arthroscopic surgery on his left knee followed by arthroscopic repair of the right knee in February 2019.  (*Id*. at 303, 326-29, 347-50)

In March 2019, one month after his right-knee surgery, Plaintiff presented to Gotham Orthopedics with a walking cane, ongoing neck and back pain, a slow limp, knee pain, and reported limited tolerance for sitting, standing, and walking.  (*Id*. at 303-04)  Examination revealed reduced cervical range of motion, diminished upper-extremity strength, and difficulty performing heel and toe raises.  (*Id*. at 305)  Dr. Sean Lager found that Plaintiff had a "moderate partial disability" and limited Plaintiff to light-duty work with lifting restrictions and no prolonged reaching and bending.  (*Id*. at 306)

E. <u>Physiatrist Dr. Ali Malik; Internal Medicine Consultative Examiner Dr. Silvia Aguiar; and Chiropractor Dr. Mitchell Zeren</u>

By mid-2019, treating physicians noted worsening functional limitations.  For example, in June 2019, physiatrist Dr. Ali Malik determined that Plaintiff had a marked partial disability, restricted lifting to no more than 5 to 10 pounds, and limited him to sedentary work. (*Id.* at 411, 415)  Dr. Malik also noted that Plaintiff was scheduled for lumbar laminectomy surgery.  (*Id.*)  Due to ongoing pain, Dr. Malik also prescribed Plaintiff opioid-based medication.  (*Id*. 414)  At a consultative examination on September 23, 2019, Dr. Silvia Aguiar opined that Plaintiff had moderate-to-marked limitations in bending, lifting, carrying, prolonged sitting, standing, and walking (*Id*. 356) and mild-to-marked limitations climbing stairs, kneeling, and crouching.  (*Id.* at 357)  In October 2019, chiropractor Dr. Mitchell Zeren documented chronic back and leg pain

5

and characterized Plaintiff's spinal condition as severe, chronic, and permanent.  (*Id*. at 1173-74)

F.   State Agency Medical Consultants Drs. A Lee and D. Schwartz

In October 2018, state agency medical consultant Dr. A. Lee reviewed Plaintiff's medical record and concluded that he could lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently.  (*Id.,* at 58)  Dr. Lee further opined that Plaintiff could occasionally perform postural activities, including climbing ramps and stairs, climbing ladders, ropes, or scaffolds, balancing, stooping, kneeling, crouching, and crawling.  (*Id.* at 59)  At the reconsideration level, state agency medical consultant Dr. D. Schwartz reviewed the evidence and affirmed Dr. Lee's assessment in full.  (*Id*. at 68-69)  In particular, Dr. Schwartz noted that Plaintiff's "gait [was] normal," he could walk on his toes and heels without difficulty, used no assistive devices, and could perform activities of daily living independently.  (*Id*. at 69-70)

### 3.  The Commissioner's Decision[3]

At the November 1, 2024 ALJ hearing before ALJ Solomon, Plaintiff testified as to his work history, impairments and treatment.  (*Id.,* at 494)  In 2024 he was temporarily employed as a full-time foreman for a construction company until the construction job for which the company was hired was completed.  (*Id.,* at 498-500)  He worked for eight hours a day, five days per week, and would spend about four hours per day walking and the other four hours sitting.  (*Id.,* at 499-501)  Plaintiff further testified that the pain medication he took made him drowsy, that while he worked in 2024, he would only take them in the evenings, but prior to

---

[3] The September 4, 2020 ALJ decision has been vacated and is therefore not the final decision of the Commissioner. Insofar as the November 20, 2024 ALJ decision is the final decision of the Commissioner, the Court recounts the details of that decision.

that (when he was not working) he would take them twice a day.  (*Id.*, at 501-04)  Plaintiff

represented that due to his back pain, he had some difficulty bending over to tie his shoes,

however could take care of his own personal hygiene and did not require the use of a cane,

walker or crutches.  (*Id.*, at 506)  Plaintiff also discussed his level of pain, his ability to perform

physical labor, and his sleep schedule.  (*Id.*, at 506-07)

   After the hearing, ALJ Solomon found that Plaintiff was not disabled within the meaning

of the Social Security Act.  (*Id.*, at 571)  Although he found that Plaintiff had a severe

impairment – lumbar disc herniation and lumbar radiculopathy and bilateral knee tears that

were status post arthroscopic surgeries – he concluded that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled the severity of one

of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (*Id.*)  In reaching his

decision, ALJ Solomon used the five-step sequential evaluation process described in the Social

Security Regulations for determining whether an individual is disabled.  (*Id.*, at 570-80)  At step

one, ALJ Solomon found that Plaintiff met the insured status requirements of the Act through

December 31, 2023.  Next, ALJ Solomon found that while Plaintiff's earnings in the third quarter

of 2018 and fourth quarter of 2019 were well below the threshold for substantial gainful

activity ("SGA") and that there have been continuous twelve-month periods during which

Plaintiff did not engage in SGA,  his earnings in the second quarter of 2024 exceeded the

presumptive earnings threshold for SGA.   Therefore, the activity that occurred in the second

quarter of 2024 is disqualifying for the period the work was performed.  (*Id.*, at 571)

Accordingly, the remainder of ALJ Solomon's analysis addressed the periods where Plaintiff did

not engage in SGA.  At step two, ALJ Solomon found that Plaintiff had the medically

7

determinable impairments listed above.  (*Id.*)  At step three, ALJ Solomon determined that none

of Plaintiff's severe impairments singly or in combination met or medically equaled an

impairment listed by the relevant regulation.  (*Id.*)  ALJ Solomon further noted that none of the

examining, consulting or treating sources opined that the claimant had any limits due to side

effects of medications.  (*Id.*, at 578)

ALJ Solomon then assessed Plaintiff's RFC.  His assessment concluded that Plaintiff

retained the RFC to perform "light work" as defined in 20 C.F.R. § 404.1567(b) with the

following additional limitations: he could sit for up to six hours; stand and/or walk for up to six

hours; lift and carry twenty pounds occasionally and ten pounds frequently; he could

occasionally climb ramps, stairs, ropes, ladders, and scaffolds he could occasionally balance,

stoop, kneel, crouch and crawl; he must avoid work at unprotected heights or around

hazardous machinery.[4]  (A.R. at 572)  ALJ Solomon explained that he reached this

determination based on "objective clinical and diagnostic evidence, the medical opinions to the

extent they are supported by evidence, the claimant's subjective statements to the extent they

are consistent with the evidence, and all reasonable inferences regarding the severity and

effects of the claimant's impairments that are supported by evidence."  (*Id.*, at 579)  ALJ

Solomon further found that Plaintiff's statements about the intensity, persistence and limiting

effects of his symptoms were not entirely consistent with the medical evidence and other

evidence in the record.  (*Id.*, at 576)  Ultimately, ALJ Solomon determined that Plaintiff had

some functional limitations associated with his impairments, however, the impairments, even

---

[4] The limits to avoidance of working at unprotected heights or with hazardous machinery were included in the RFC entirely due to Plaintiff's testimony representing that the pain medications he took made him drowsy.

when taken together, were not so functionally limiting that he is unable to perform work on a sustained basis.

Based on his RFC determination, ALJ Solomon found that Plaintiff has no past relevant work and therefore transferability of job skills was not an issue.  (*Id.*, at 579 (citing 20 C.F.R. § 404.1564; 20 C.F.R. § 404.1565))  Nonetheless, after considering Plaintiff's age, education, work experience, and RFC, and relying on the testimony from Vocational Expert ("VE") Christina Boardman, ALJ Solomon concluded there are a range of jobs that exist in significant numbers in the national economy Plaintiff can perform, such as Marker, Routing Clerk, and Office Helper. (*Id.*, at 580)  Thus, ALJ Solomon found that Plaintiff had not been disabled from May 7, 2018 through the DLI, December 31, 2023.  (*Id.*)

## **LEGAL STANDARD**

### 1.  **Scope of Judicial Review under 42 U.S.C. § 405(g)**

A court reviewing a final decision by the Commissioner must, as a threshold matter, determine whether the ALJ provided the plaintiff with a full and fair hearing under the Secretary's regulations and fully and completely developed the administrative record.  *See Intonato v. Colvin*, No. 13 Civ. 3426 (JLC), 2014 WL 3893288, at *8 (S.D.N.Y. Aug. 7, 2014) (internal citation omitted).  The duty to develop the record requires the ALJ "to ensure that the record contains sufficient evidence to make a determination."  *Bussi v. Barnhart*, No. 01 Civ. 4330 (GEL), 2003 WL 21283448, at *8 (S.D.N.Y. June 3, 2003).  The ALJ must obtain additional information "when the evidence as a whole is not complete enough for the ALJ to make a determination."  *Id.* (citation omitted).  An ALJ's failure to adequately develop the record is an

9

independent ground for vacating the ALJ's decision and remanding the case. *Moran v. Astrue*, 569 F.3d 108, 114-15 (2d Cir. 2009).

Once the Court is satisfied that the plaintiff was afforded a full hearing and the record is fully developed, the Court then assesses the Commissioner's conclusions. In doing so, the Court is limited to determining whether the Commissioner's conclusions (1) "were supported by substantial evidence in the record," and (2) "were based on [application of the] correct legal standard." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (citing *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008)).

Substantial evidence is "more than a mere scintilla." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). To be supported by substantial evidence, the ALJ's decision must be based on consideration of "all evidence available in [the claimant]'s case record." 42 U.S.C. §§ 423(d)(5)(B). The ALJ's decision must set forth "a discussion of the evidence" and the "reasons upon which [the decision] is based." *Id*. § 405(b)(1). It must do so "with sufficient specificity to enable the reviewing court to decide whether the determination is supported by substantial evidence." *Herrera v. Comm'r of Soc. Sec.*, No. 20 Civ. 7910 (KHP), 2021 WL 4909955, at *5 (S.D.N.Y. Oct. 21, 2021) (citing *Calzada v. Astrue*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010)).

That said, the ALJ need not "mention[ ] every item of testimony presented," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983), or "reconcile explicitly every conflicting shred of medical testimony," *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010). If the ALJ fails to consider

10

evidence in the record, the Court must be "able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence." *Mongeur*, 722 F.2d at 1040 (citation omitted). If the Commissioner's findings are supported by substantial evidence, those findings are conclusive. 42 U.S.C. § 405(g); *see also Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010); *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996).

**2. Standard Governing Evaluations of Disability Claims by the Commissioner**

Under the Act, a claimant is disabled if he lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. § 423(d)(1)(A). A person will be found to be disabled within the meaning of the Act only if it is determined that the "impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To determine eligibility for disability benefits, the Commissioner is required to conduct a sequential five-step inquiry whereby the Commissioner determines: (1) whether the claimant is currently engaged in any substantial gainful activity ("SGA"); (2) if not, whether the claimant has a "severe" impairment or combination of impairments that limits their ability to do basic work activities; [5] (3) if so, whether the impairment is listed in Appendix 1 of the regulations, and what

---

[5] An impairment, or a combination of impairments, is considered "severe" under the regulations when it substantially restricts an individual's capacity to carry out basic work-related activities. Conversely, an impairment or combination of impairments is deemed "not severe" when the medical and other relevant evidence demonstrates that it involves no more than a minor abnormality – or a set of minor abnormalities – that would have only a minimal impact on the individual's ability to perform work functions. *See* 20 C.F.R. § 404.1522, Social Security Rulings (SSRs) 85-28 and 16-3p. The Agency's Listing of Impairments "describes for each of the major body

the claimant's RFC is; [6] (4) if the impairment does not qualify as a listed impairment, whether

the claimant possesses the RFC to perform their past relevant work; and (5) if the claimant is

not capable of performing past work, whether they are capable of performing other work that

exists in the national economy when considering their age, education, and work experience.

*See Vellone v. Saul*, No. 20 Civ. 261 (RA) (KHP), 2021 WL 319354, at *5 (S.D.N.Y. Jan. 29, 2021),

*report and recommendation adopted sub nom. Vellone on behalf of Vellone v. Saul*, No. 20 Civ.

261 (RA) (KHP), 2021 WL 2801138 (S.D.N.Y. July 6, 2021).  The claimant bears the burden of

proof at the first four steps of the analysis, and at the last step, the Commissioner has the

burden of showing there is other work the claimant could perform.  *Balsamo v. Chater*, 142 F.3d

75, 80 (2d Cir. 1998).  However, "a claimant need not be an invalid to be found disabled under

the Social Security Act." *Nunez v. Comm'r of Soc. Sec.*, 160 F. 4th 60, 77 (2d Cir. 2025) (quoting

*Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (internal quotation marks omitted)).  To qualify

for benefits under the Act, a plaintiff must present evidence demonstrating an inability "to

engage in any SGA by reason of any medically determinable physical or mental impairment

which can be expected to result in death, or which has lasted or can be expected to last for a

*continuous* period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A) (emphasis added).

When considering evidence in the form of medical opinions, the Commissioner must

consider: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization,

and (5) other factors.  20 C.F.R. §§ 404.1520c(c), 416.920c(c).  The supportability and

---

systems[,] impairments ... consider[ed] ... severe enough to prevent an individual from doing any gainful activity."
20 C.F.R. § 404.1525(a).

[6] A plaintiff's RFC is their ability to do physical and mental work activities on a sustained basis despite limitations from physical or mental impairments.  In making this finding, the Commissioner must consider all of the plaintiff's impairments, including impairments that are not severe. *See* 20 C.F.R. § 404.1520(e); 404.1545.

consistency factors are the "most important," and ALJs must explain how they considered those factors for medical opinions. *Id*. §§ 416.920a, 416.920c(b)(2). The supportability inquiry focuses on how well a medical source supported and explained their opinion. *Vellone,* 2021 WL 319354, at *6. The question of consistency concerns whether the opinion is consistent with other evidence in the medical record. *Id.* The Commissioner is tasked with analyzing medical opinions at the source-level, meaning the Commissioner need not discuss each medical opinion in the record, and may apply the five factors holistically to a single medical source. *Id.;* §§ 404.1520c(b)(1); 416.920c(b)(1). Regarding claims filed on or after March 27, 2017, in evaluating the medical evidence, the Commissioner need not assign particular evidentiary weight to examining or treating physicians as was previously required by the Act. *Vellone*, 2021 WL 319354, at *6. However, the regulations continue to recognize the "foundational nature" of the observations of treating sources. *Steven M.W. v. Comm'r of Soc. Sec.*, No. 21 Civ. 390 (LJL) (GRJ), 2022 WL 2669491, at *6 (S.D.N.Y. June 17, 2022), *report and recommendation adopted sub nom*., *Washburn v. Comm'r of Soc. Sec.*, No. 21 Civ. 390 (LJL) (GRJ), 2022 WL 2669296 (S.D.N.Y. July 11, 2022).

## **DISCUSSION**

At the outset, the Court finds, and the parties do not dispute, that ALJ Solomon provided Plaintiff with a full and fair hearing under the Secretary's regulations and properly developed the administrative record. Thus, the Court now turns to the contention at the heart of Plaintiff's motion: that ALJ Solomon's RFC assessment is not supported by substantial evidence because he erred in his assessment of the medical opinion evidence.

The thrust of Plaintiff's argument is that ALJ Solomon did not accord due weight to examining physician opinions when making a determination regarding Plaintiff's RFC, and instead erroneously found that certain opinions, primarily those from Drs. Aguiar, Lager, Malik, and Semble were only "partially persuasive" or of "limited persuasive value" because they were inconsistent with the evidence in the record. (A.R. at 576-78) Plaintiff contends that the opinions ALJ Solomon did not fully credit are not only internally consistent, but also consistent with each other and that he erred by crediting opinions that supported his findings and eschewed those that did not. Indeed, Plaintiff further avers that ALJ Solomon relied on his "lay interpretation" of the objective medical evidence rather than evaluating the supportability and consistency of the medical opinions of record. (Pl. Mem., at 19) The Commissioner argues that ALJ Solomon properly weighed the medical opinions, and substantial evidence supports his evaluations of the medical evidence and the RFC. That is, ALJ Solomon reasonably found that numerous normal examination results and inconsistencies in the record undermined the restrictive limitations identified by the treating physicians or in Plaintiff's subjective statements. The Court has considered both positions and after carefully reviewing the record, concludes that there is no basis for remand and that the decision of the ALJ should be affirmed.

With respect to Dr. Aguiar, ALJ Solomon reasonably found the doctor's opinion only partially persuasive because it was not "expressed in vocationally relevant or function-by-function terms that describe specific limitations" or "supported by 'the grossly normal results of'" his examination. (A.R. at 576) Dr. Aguiar opined that Plaintiff had moderate-to-marked limitations in bending, heavy lifting, carrying, and prolonged standing, walking, and sitting, with milder limitations in climbing stairs, kneeling, and crouching. (*Id.*, at 356-57) However, as ALJ

14

Solomon explained, these limitations were neither fully supported by Dr. Aguiar's own examination findings nor consistent with other opinions, objective findings, or Plaintiff's reported activities of daily living. (*Id.*, at 576)  Although ALJ Solomon agreed with – and indeed did not disregard – Dr.  Aguiar's findings that Plaintiff exhibited reduced lumbar spine and bilateral knee range of motion, Dr. Aguiar's own findings, which the ALJ Solomon credited, also reported that Plaintiff had a generally intact range of motion in his shoulders, elbows, forearms, wrists, hips, and ankles bilaterally.  Dr. Aguiar also reported that Plaintiff had a positive straight-leg raise test on the left side, positive Braggard's test, mild quadricep atrophy, tenderness, and generally mild radiographic findings.  (*Id.*, at 354-358, 380, 409, 412-413)  Objective findings on the record documented a divergent disposition including full range of motion in the shoulders, elbows, forearms, wrists, hips, and ankles, full strength in all extremities, a negative straight-leg raise test bilaterally, no muscle atrophy, an intact gait, and normal neurological findings.[7]  (*Id.* at 253, 255, 282, 289, 305, 359, 394, 443, 1084, 1159)  While the clinical evidence supports Dr. Aguiar's finding that the Plaintiff's back and knee impairments limited his exertional activities, following successful knee surgeries, Plaintiff's residual symptoms were managed conservatively. (*Id.,* at 575)  Additionally, though surgical intervention for the lumbar/spine was initially considered, Plaintiff opted for conservative treatment via medication, injections, physical therapy, and chiropractic care.  (*Id.,* at 373); *see also Tricarico v. Colvin*, 681 F. App'x 98, 100 (2d Cir. 2017) (finding that it is not improper for an ALJ to suggest that a conservative treatment plan is inconsistent with a medical opinion that reports extreme limitations).  Accordingly, ALJ

---

[7] ALJ Solomon similarly found Dr. Zeren's conclusion that Plaintiff's spine appeared unstable inconsistent with these objective findings.  (*Id.*, at 574)

Solomon noted that the clinical findings generally showed reduced range of motion, but motor strength and function remained objectively normal across all areas. (*Id.,* at 575)

Dr. Aguiar's opinion that Plaintiff's limitations were marked is further challenged by the opinion of Dr. A. Lee (which was affirmed and adopted by Dr. D. Schwartz on reconsideration in 2024), who opined that Plaintiff could lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; could stand/walk about 6 hours in an 8-hour workday and sit for about 6 hours; occasionally climb ramps and stairs and occasionally climb ladders, ropes, or scaffolds; and occasionally balance, stoop, kneel, crouch, and crawl. Further, ALJ Solomon permissibly considered Plaintiff's day-to-day activities during the relevant period – which included, *inter alia*, attending church weekly, using public transit, shopping for groceries, caring for personal needs, visiting the park with his wife, and performing household chores and repairs with some assistance – when considering Dr. Aguiar's opinion. (A.R. at 175-78) Such activities in conjunction with the "onset, description, and location of the claimant's symptoms, precipitating and aggravating factors, frequency and duration, change over time, success or failure of treatment, side effects of medication, daily activities, and all factors relating to the claimant's functional capacity, limitations, and restrictions due to pain or other symptoms" reasonably undermine allegations of disabling functional limitations during the relevant period and support ALJ Solomon's assessment of Plaintiffs RFC for a range of light work. (*Id.*, at 575 (citing 20 C.F.R. §§ 404.1529, 416.929) Put simply, while Dr. Aguiar's moderate limitations opinion was supported by the evidence and was consistent with objective findings, his opinion that Plaintiff's limitations were marked is subject to reasonable disagreement. Accordingly, ALJ Solomon's conclusion that Dr. Aguiar's findings did not justify limitations greater than moderate

in most functional domains is supported and sufficiently fleshed out in ALJ Solomon's findings of fact and conclusions of law.

ALJ Solomon likewise reasonably evaluated Dr. Lager's opinion.   Dr. Lager opined that Plaintiff could return to work with a lifting restriction of ten pounds.  (*Id.* at 306)  ALJ Solomon found this opinion only "partially persuasive," explaining that the restrictive lifting limitation likely reflected Plaintiff's status one month after knee surgery and was inconsistent with Plaintiff's subsequent attempt to return to heavy work in December 2018.  (*Id*. at 304, 335, 577)  Similarly, ALJ Solomon did not err in finding Dr. Malik's opinion "of limited persuasive value." Dr. Malik opined that Plaintiff was limited to lifting and carrying five to ten pounds and could perform only sedentary work with a sit-stand option.  (*Id.*, at 415)   As ALJ Solomon explained, this opinion was unsupported by Dr. Malik's own examination findings, which included no lumbar spasm or tenderness, negative straight-leg raising, full strength and sensation, and only minimally reduced cervical and lumbar range of motion. (*Id.*, at 413, 578)  The opinion was also inconsistent with Plaintiff's brief return to heavy-duty work in late 2018 and with other medical opinions indicating an ability to lift and carry up to twenty-five pounds.  (*Id.*, at 320, 1069) These inconsistencies provided a valid basis for partially discounting Dr. Malik's opinion. Plaintiff's argument that his attempt to return to heavy work should have been disregarded as a failed work attempt is contrary to the regulations, which expressly permit consideration of work activity – even if not SGA—as evidence of functional capacity.  20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.")  ALJ Solomon's reasoning in this regard was thus coherent and supported by substantial evidence.

Finally, as to Dr. Semble's opinion, ALJ Solomon found it of "limited persuasive value." (A.R. at 577-78)  Dr. Semble's examination revealed that approximately three and a half months after the alleged onset date, Plaintiff demonstrated relatively normal results.  (*Id.*, at 318) Specifically, Dr. Semble observed that Plaintiff had a normal gait, moved his neck, body, and head freely, had a 5/5 muscle strength score, and used a back and left knee brace, but no walker, cane or crutches.  (*Id.,* at 316-20)  Dr. Semble made no observations that Plaintiff's limitations or injuries were marked or severe, in fact, he opined that Plaintiff exhibited only a "mild partial causally related orthopedic disability."  (*Id.*, at 319)  Nevertheless, he recommended that Plaintiff be limited to work that did not require lifting or carrying over 25 pounds.  ALJ Solomon found this opinion to be of limited persuasive value primarily because it was internally inconsistent and did not provide sufficient explanation for the conclusion.  (*Id.,* at 578)  Indeed, ALJ Solomon noted that Dr. Semble neglected to state specific limits regarding standing and walking.  (*Id.*)  Further, ALJ Solomon observed that Dr. Semble's opinion that Plaintiff could never stoop is inconsistent with nearly every other medical opinion, all of which indicate that Plaintiff retained at least some limited ability to bend.  (*Id.*)  For example, independent medical examiner Dr. Jeffrey Ritholtz opined that Plaintiff could perform light duty work that involved lifting and carrying up to 25 pounds.  (*Id*., at 295)  ALJ Solomon also found Dr. Semble's opinion to be inconsistent with the objective medical evidence, which identifies no such restriction.  (*Id.,* at 574-76)

Plaintiff's reliance on isolated positive findings during the relevant time period – such as difficulty squatting, reduced lumbar range of motion, or evidence of a lumbar disc bulge – does not compel a different outcome.  The presence of some evidence lending credence to Plaintiff's

18

position is not grounds to vitiate the ALJ's decision where there is substantial evidence to support it.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) ("[O]nce an ALJ finds facts, we can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise.*'" (quoting *Warren v. Shalala,* 29 F.3d 1287, 1290 (8th Cir.1994)) (emphasis in original); *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (citing *Selian v. Astrue,* 708 F.3d 409, 417 (2d Cir.2013) ("If there is substantial evidence to support the [agency's] determination, it must be upheld.")).  Plaintiff's disagreement with the ALJ's assessment of the evidence is not a basis for remand.  *See Wilson o/b/o J.J.W. v. Comm'r of Soc. Sec.*, No. 19 Civ. 737 (DB), 2020 WL 3447800, at *5 (W.D.N.Y. June 24, 2020) ("[M]ere disagreement with the ALJ's findings does not warrant remand.")  Instead, the Court must defer to the ALJ where, as here, each of the opinions was properly considered under the required factors, and substantial evidence – that is sufficient evidence "as a reasonable mind might accept as adequate to support a conclusion"—supports the ALJ's evaluation.  Accordingly, the Court finds no error in the evaluation of the medical opinion evidence.  *Id.*

Several courts in this District have held that medical opinions describing moderate or even moderate-to-marked limitations are not inherently inconsistent with an RFC for a range of light work.  *See Morales v. Berryhill*, 484 F.Supp. 3d 130, 137-38 (S.D.N.Y. 2020) (finding that medical opinions describing a "moderate limitation . . . is not inconsistent with an RFC to perform simple work." (citing *Zabala*, 595 F.3d at 410 )); *Gomez v. Comm'r of Soc. Sec*, No. 16 Civ. 4251 (WHP) (SN), 2017 WL 2124470, at *12 (S.D.N.Y. Apr. 20, 2017), *report and recommendation adopted*,  No. 16 Civ. 4251 (WHP) (SN), 2017 WL 2126862 (S.D.N.Y. May 16, 2017) (determining that medical opinions finding the plaintiff had moderate-to-marked

19

limitations in squatting, kneeling, crouching and moderate limitations in lifting, carrying, pushing, and pulling was reconcilable with an RFC that limited the plaintiff to light work "requiring lifting and carrying no more than 20 pounds occasionally and 10 pounds frequently."); *cf. Taveras v. Comm'r of Soc. Sec,* No. 22 Civ. 10825 (KHP), 2024 WL 687912, at *12 (S.D.N.Y. Feb. 17, 2024) (finding that the because the ALJ "rejected *all* the medical opinion evidence," his determination of an RFC for light work was inapposite when there was *no* medical evidence at all in the record suggesting the plaintiff "could ever lift more than ten pounds, or even regularly lift ten pounds." (emphasis added))  Though there may be some disagreement here as to whether Plaintiff is disabled within the meaning of the Act, it is clear from the record that ALJ Solomon did consider the medical opinion evidence presented and reached a conclusion supported by substantial evidence; albeit a conclusion with which Plaintiff does not agree.

Finally, Plaintiff argues that ALJ Solomon impermissibly substituted his own judgment for that of medical experts or otherwise "cherry-picked" evidence.  Not so.  Federal courts reviewing administrative Social Security determinations routinely condemn "cherry-picking" of the evidentiary record – that is, the selective reliance on portions of evidence that support the ALJ's conclusions while wholly ignoring contrary findings from the same source.  *See Artinian v. Berryhill*, No. 16 Civ. 4404 (ADS), 2018 WL 401186, at *8 (E.D.N.Y. Jan. 12, 2018).  Based on the Court's exhaustive review of the administrative record, ALJ Solomon discussed both favorable and unfavorable evidence and explained how he resolved conflicts in detail.  To wit,  ALJ Solomon credited various opinions and testimony that were favorable to Plaintiff in his RFC determination including, but not limited to, Plaintiff's testimony regarding the effects of his

pain medication (A.R. at 578), medical opinions that Plaintiff was unable to continue performing "heavy work" (*Id.*, at 577), and clinical evidence that Plaintiff had impairments in both his back and knees. (*Id.*, at 575)   Disagreement with the ALJ's weighing of the evidence does not constitute reversible error or "cherry-picking" under the applicable standard of review. *See Schaal v. Apfel,* 134 F.3d 496, 503-04 (2d Cir. 1998) (stating that an ALJ's determination must be upheld as long as he provides a plaintiff with "good reasons" for the lack of weight attributed to a physician's opinion).  It is well settled that an ALJ may credit portions of medical opinions, discount others, and weigh different aspects of the same opinion differently, so long as the decision is grounded in, and substantially supported by, the evidentiary record and sufficiently explained.  *See Fiorello v. Heckler,* 725 F.2d 174, 176 (2d Cir. 1983) ("Although we do not require that, in rejecting a claim of disability, an ALJ must reconcile explicitly every conflicting shred of medical testimony, we cannot accept an unreasoned rejection of all the medical evidence in the claimant's favor.")  Moreover, at no point did ALJ Solomon reject, wholesale, one, much less all, the medical opinions in the record.  Thus, ALJ Solomon's decision to accord little weight to certain medical opinions that found Plaintiff exhibited marked limitations, but greater weight to opinions that he reasoned to be more consistent with the objective findings is entirely appropriate.  *See e.g., Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (holding that the ALJ did not err when crediting an examining doctor's medical opinion differently where "the record plainly contained conflicting . . . evaluations of [the plaintiff's] present condition, and it was within the province of the ALJ to resolve that evidence in the way she did."); *Artinian*, 2018 WL 401186, at *8 ("[C]redit[ing] portions of medical source opinions, or weigh[ing] different parts of the same opinion differently" is "entirely proper" and does not constitute "cherry

21

picking" as " it is the ALJ's responsibility to resolve conflicts present in the administrative record."); *Johnson v. Colvin*, 669 F. App'x 44, 47 (2d Cir. 2016) (finding that just because the ALJ did not adopt any single medical opinion wholesale does not establish reliance on a lay opinion).

## CONCLUSION

For the foregoing reasons, the Plaintiff's motion for judgment on the pleadings is DENIED, the Commissioner's motion for judgment on the pleadings is GRANTED, the Commissioner's decision is affirmed, and the action is hereby DISMISSED.

**The Clerk of Court is respectfully directed to terminate the pending motion at ECF No. 15.**

**SO ORDERED.**

DATED:      New York, New York
            February 18, 2026

_____
KATHARINE H. PARKER
United States Magistrate Judge

22